CHARLES I. RATHBUN ET UX. *vs.* NATHAN A. GEER.

Second Judicial District, Norwich, May Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

In the construction of distributions of land, a description by known and fixed monuments will control a description by courses and distances.

A pond and dam may be such a monument.

There is no rule of law that in case of an irreconcilable repugnancy between two descriptions of the same parcel of land in the distribution of an estate, the former is to prevail.

If adjoining proprietors of land, who derive title from the same written instrument, agree upon a certain line as the true line of division between them, and mark it as such by monuments, and possession is maintained accordingly by them and their successors in title for more than fifteen years, each party can thereafter claim title up to such line, notwithstanding a different boundary was stated in such instrument; nor is it necessary to show that the terms or even the existence of the latter, were ever known to those who originally established the new line, or to their successors in interest.

*Perry* v. *Pratt,* 31 Conn., 433, commented on and distinguished.

[Argued June 1st—decided June 29th, 1894.]

ACTION in the nature of trespass *quare clausum fregit,* brought to the Court of Common Pleas for New London County, and tried to the jury before *Crump, J.;* verdict and judgment for the defendant and appeal by the plaintiffs for alleged errors of the court in charging the jury. *Error and new trial granted.*

The *locus in quo* was a meadow which had formerly been the southerly part of the bed of a mill-pond, the dam of which had gone to decay. The land was still occasionally flowed, and the ruins of the dam remained. This pond and all the surrounding land belonged, in 1831, to an estate, in the distribution of which there was set out to Zebadiah Comstock, Jr. (under whom the defendant claimed title), 38 acres of land, bounded by a line commencing at the southeast corner of the tract, at a fixed point on the west side of a road, and which at one point ran to a rock "on the east side of the pond; thence with the pond northerly 20

rods to John Allen's land;" and, after including land north and west of the pond, ran from a definite corner on Calvin Bolles' land, in a straight line S. 86° E. 150 rods, to the place of beginning; these words being next added, "and to include the whole pond with the dam."

In the same distribution there was afterwards set to Bethiah Baker's heirs, whose title came to the plaintiffs, 38 acres of land bounded on the north by a line beginning on the west side of the road, at the southeast corner of the tract set to Zebadiah Comstock, Jr., and running "thence S. 86° W. 150 rods to Calvin Bolles land." A straight line between these points did not in fact run S. 86° W., nor was its length 150 rods, and it would cut across the pond two or three rods above the dam.

The plaintiffs offered evidence that some years after the distribution, the then owners of these tracts had agreed upon a certain line as the proper division line between them, and marked it by monuments, and that such line had ever since and for over fifty years been recognized and acquiesced in by them and their successors in title, down to the year 1891, when the defendant acquired title.

The plaintiffs asked the court to instruct the jury that if they should find that "there are two clauses in the distribution of a certain property to Zebadiah Comstock, Jr., which are so repugnant as not to stand together, the first prevails over the last;" and "that if they should find that the parcels of land in the distribution of Zebadiah Comstock's estate are described by both general or collective and special descriptions, and nothing exists which satisfies all the descriptions, but something exists which satisfies some one of them, and is described with sufficient certainty, the others may be disregarded."

The court did not give either instruction, but after charging the jury that in case of irreconcilable conflicts, monuments controlled courses and distances, proceeded as follows: "About some of the other bounds the surveyors and witnesses have expressed doubt and uncertainty, but there is no doubt or uncertainty about the location of the dam, nor

about that clause of the description which purports to set it off to Zebadiah, Jr., so that if you should find that at the time of the distribution the pond and the dam existed as they are at present located, then it seems to me that you must find the dividing line between them, as described in the distribution, south of the dam."

The jury were further told that if they found that the original distributees, a few years after the distribution, agreed to, and ran, a division line, as claimed by the plaintiffs, south of the *locus in quo*, and that they and their grantees had ever afterwards, down to 1891, occupied and held undisputed possession accordingly, "the line so recognized must be taken as the true line, provided, of course, that the original parties establishing or acquiescing in it, had knowledge of the facts in relation to the description in the distribution, when they established or agreed to it."

*Charles F. Thayer* and *Charles W. Comstock*, for the appellants (plaintiffs).

*Frank T. Brown* and *Amos A. Browning*, for the appellee (defendant).

BALDWIN, J. The return of distribution, under which both parties claim title, must be so construed, if possible, as to give effect to every part, and make them all consistent with each other.

The southerly boundary of the tract set to Zebadiah Comstock was described as a straight line running from west to east, S. 86° E., for 150 rods, from one fixed monument to another; and the northerly boundary of the adjoining tract set to Bethiah Baker's heirs was described as a straight line running westerly from the latter of these monuments to the former, S. 86° W., 150 rods. The words, however, added to the description of the Comstock tract, "and to include the whole pond with the dam," if given their natural effect, would carry its southerly boundary, for the space of a number of rods, a few rods south of the line connecting the two

monuments. The rest of the boundary, as described, on
each side of the pond, could be maintained, not indeed in
the exact course designated, but in a straight line between
the monuments at either end. The course designated for
the northerly boundary of the Baker tract was plainly in-
consistent with that previously designated for the southerly
boundary of the Comstock tract; since it was a straight line
running between the same monuments in a reversed direc-
tion, and, if the course of that was correctly described as S.
86° E., the course of this must have been N. 86° W., instead
of S. 86° W. The length of this line was also incorrectly
given. Upon this state of facts, the court properly instruct-
ed the jury that the pond and dam were controlling monu-
ments, and that the dividing line between the parties was
south of such dam.

The court was also right in refusing to charge as requested
by the plaintiffs. It was a question of law, upon the facts
presented, whether there were clauses in the distributors'
description of the Comstock tract so repugnant that they
could not stand together; and there is no rule that in case
of such repugnancy the first clause necessarily prevails over
the last. In respect to the second request, so much of it as
was law was substantially given, and in a manner much
more direct and intelligible to the jury, when they were in-
structed that the pond and dam were controlling monuments.

The plaintiffs, however, claimed and offered evidence to
prove that the predecessors in title of both parties, more than
fifty years ago, established and defined the dividing line
between the Comstock and the Baker tracts, as a straight
line north of the dam, marking it by heaps of stones and
posts, and that they and their successors ever since, down to
a time shortly before the alleged trespass by the defendant,
had always recognized and acquiesced in the boundary thus
established. This claim, if supported by proof, would ren-
der the meaning and effect of the original distribution quite
unimportant, since the line thus agreed on by the parties in
interest, and so long acquiesced in by their successors, would
thereby become the true boundary for all purposes. The

Rathbun et ux. *v.* Geer.

court so charged the jury, but with the addition of this qualification: "provided, of course, that the original parties establishing it, or acquiescing in it, had knowledge of the facts in relation to the description in the distribution, when they established or agreed to it." These instructions were probably based upon a misconstruction of the opinion of this court in *Perry* v. *Pratt*, 31 Conn., 433. That was an equitable proceeding to establish a lost boundary. The original boundary had been a salt water creek, which in course of years had changed its bed, by avulsion; and it was claimed that the adjoining proprietors had acquiesced in it, as a boundary, in its new course. The court held that such an acquiescence, continued for fifteen years, with knowledge of the facts as to the change of bed, would establish a new line of division. But the knowledge thus required related only to the changes in the physical condition of the boundary. It was not enough to show that the parties acquiesced in the continuance of the creek as marking the boundary between them, unless it was also proved that they knew it had changed its bed. So in the case at bar, the acquiescence of the adjoining proprietors in the new line must have been with knowledge of the facts relating to the situation and marking of such line, but it was not necessary to show that they or any of them knew of the terms or even of the existence of the original distribution.

For this reason there is error in the judgment appealed from and a new trial is ordered.

In this opinion the other judges concurred.